OPINION OF THE COURT
Chief Judge Breitel.
Plaintiff Alvord & Swift, subcontractor on a construction project for the renovation of a New York Telephone Company facility, seeks damages due to delays incurred in the performance of its subcontract. Named as defendants were: the general contractor, Stewart M. Muller Construction Co., and Stewart M. Muller; the owner, New York Telephone; and the architects. From two separate orders at Special Term, one granting summary judgment under CPLR 3212 to New York Telephone and the other under CPLR 3211 dismissing two causes of action against the architects, plaintiff appealed to the Appellate Division. That court affirmed, and plaintiff again appeals.
The issues have been extensively treated in two opinions by Mr. Justice Edward J. Greenfield at Special Term. The only issue requiring further discussion is whether summary judgment was properly granted defendant on plaintiff’s sixth cause of action, alleging that defendant New York Telephone actively interfered with performance of plaintiff’s work. The issue raises two questions: first whether summary judgment may be granted to defendant where plaintiff, in its submissions, has made out a cause of action not contained in its pleadings; and second, whether a tort cause of action for interference with contractual relations is established when the only interference asserted is not intentional, but only incidental to another legitimate business purpose of the defendant.
The order of the Appellate Division should be affirmed. Modern principles of procedure do not permit an unconditional grant of summary judgment against a plaintiff who, despite defects in pleading, has in his submissions made out a cause of action. But in this case, because no facts establishing intentional interference with plaintiff’s contractual relations have ever been alleged or proved, plaintiff has failed to demonstrate the existence of a triable issue of fact. Summary judgment was, therefore, properly granted (CPLR 3212).
On October 17, 1969 the contractor Muller and the owner New York Telephone contracted for improvements on a New York Telephone building. Later, plaintiff Alvord and Swift *280 subcontracted to perform the heating, ventilating, and air-conditioning work. The prime contract, between Muller and New York Telephone, provided that "[n]othing contained in the Contract Documents shall create any contractual relation between the Owner * * * and any Subcontractor”. Alvord’s subcontract, by its terms, incorporated the terms of the prime contract, and also provided Alvord with "the benefits of all rights, remedies and redress against the Contractor which the Contractor * * * has against the Owner”. Thus, Alvord had no contractual relationship with New York Telephone; its contractual recourse was against Muller only.
Construction did not proceed on schedule, despite contractual provisions providing that time was of the essence. The project was not completed until almost three years after the originally scheduled completion date, and the delay entailed significant additional expense to plaintiff subcontractor. As a consequence, this action was brought, with plaintiff seeking damages of $847,559. The general contractor, however, because of insolvency, is apparently incapable of satisfying plaintiff’s claim. Thus, various claims were interposed against the owner and the architects as well, despite the explicit language in the prime contract and the subcontract.
Plaintiff’s sixth cause of action alleges, in essence, that the owner failed to supervise the project and the general contractor "with the consequence that Alvord was disrupted and delayed in the orderly and timely performance of its work under the Alvord subcontract.” From the language of the complaint, this cause of action appears to be for breach of the prime contract between New York Telephone and Muller. So reading the complaint, Special Term granted summary judgment, emphasizing Alvord’s lack of privity.
On appeal, however,- plaintiff contends that the sixth cause of action is one for tortious interference with Alvord’s performance of its contract with Muller. Since the memoranda of law submitted to Special Term are not included in the record on appeal, it is not possible with certainty to conclude that plaintiff did not argue a tort theory in support of its sixth cause of action. In any event, because this case involves summary judgment, not sufficiency of the complaint, failure to state a tort cause of action in pleadings would not be sufficient to permit unconditional summary judgment in favor of defendant, as a matter of law, if plaintiff’s submissions provided evidentiary facts making out a cause of action (see, e.g., Irving *281 Fin. Corp. v Wegener, 30 AD2d 958; see, also, 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10).
Long before enactment of the CPLR, on motion for summary judgment courts looked beyond the pleadings to discover the nature of the case (see, e.g., Curry v Mackenzie, 239 NY 267, 272). Even when deficiencies in the plaintiff’s complaint have induced courts to grant summary judgment in favor of defendant, amendment of the complaint has frequently been permitted or directed, even by appellate courts (see, e.g., Potolski Int. v Hall’s Boat Corp., 282 App Div 44, 48 [Bergan, J.]; Elsfelder v Cournand, 270 App Div 162, 165; cf. Babtkis Assoc. v Tarazi Realty Corp., 34 AD2d 754, 755). It has only been the dead hand of a criticized case that influenced courts to grant summary judgment for defendant when a plaintiff’s submissions, but not its pleadings, made out a cause of action (see Cohen v City Co. of N. Y., 283 NY 112, 117; but see, in criticism, Shientag, Summary Judgment, pp 67-73; see, also, Diemer v Diemer, 8 NY2d 206, 211-212 [Fuld, J.]). With the advent of the modern principles underlying the CPLR, application of the archaic rule is no longer merited. It must be admitted, of course, that the archaic rule, although theoretically unsound, produces no pernicious harm so long as plaintiff may in a proper case be permitted to amend its complaint to allege the cause of action proved in its submissions, the applicable Statute of Limitations not barring the late amendment.
Even under the most modern principles, on any view summary judgment in this case was properly granted, not because of any defects in pleading, but because plaintiff’s submission in opposition to the motion for summary judgment raised no unresolved issue of fact with respect to the purported tortious interference (see CPLR 3212, subd [b]; see, e.g., Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341, 343).
Intentional interference with contractual relations is, of course, recognized as a tort (see, e.g., Hornstein v Podwitz, 254 NY 443, 448). But the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose (see Rockaway Blvd. Wrecking & Lbr. Co. v Raylite Elec. Corp., 26 AD2d 9, 11-12, and cases cited; see, generally, Prosser, Torts [4th ed], pp 938-946, esp pp 941-942). On this view, to survive a motion for summary judgment, plaintiff was obliged to produce evidence, not just unsubstantiated allegations or assertions, that the owner intentionally and unjustifi *282 ably interfered with the work to be done by the subcontractor. This plaintiff has failed to do. In fact, even on appeal plaintiff’s contention, in substance, is that, because of the alleged breach of contract between owner and contractor, there was incidental interference with its work. There has never been any indication that an intentional tort was committed in the sense of an intention to harm plaintiff without economic or other lawful excuse or justification.
Of course, a property owner may often have a legal obligation not to interfere with the work of subcontractors, whether the interference be intentional or otherwise. But such an obligation would be contractual in nature, and barred in this case by the absence of privity between owner and subcontractor. Plaintiff, in reliance on Special Term’s unreported opinion in a companion case, apparently contends that an owner’s obligation not to interfere has been recognized "no matter what the contract” (Underhill Constr. Corp. v New York Tel. Co., Sup Ct, New York County, Sept. 9, 1976, Greenfield, J., pp 17-18, affd 56 AD2d 760, affd 44 NY2d 666). In this context, "no matter what the contract” must be read to mean only that the obligation may be implied by law into an existing contract, whatever the express terms of the contract (see Peckham Rd. Co. v State of New York, 32 AD2d 139, 141, affd 28 NY2d 734; Johnson Drake & Piper v State of New York, 29 AD2d 793, 794-795; cf. Cauldwell-Wingate Co. v State of New York, 276 NY 365, 376; in all of which the litigating parties were in privity of contract). There exists, however, no tort liability to incidental beneficiaries not in privity.
In sum, plaintiff has produced no evidence in support of its sixth cause of action.
Accordingly, the order of the Appellate Division should be affirmed, with costs.